Honorable Tony Powell State Representative, 85th District 7313 Winterberry Wichita, Kansas 67226
Dear Representative Powell:
As state representative for the 85th district you pose a number of related questions which pertain to the authority of licensed practical nurses and unlicensed technicians to perform specific medical procedures. You also ask whether the Kansas board of nursing is authorized to issue legal opinions or interpretations of law.
You present us with the following factual scenario from which your questions arise. Kansas Nephrology Associates, P.A., (KNA) is a professional corporation owned by three physicians who operate dialysis facilities in various Kansas cities and towns. KNA's dialysis facilities are either free-standing buildings or located in space leased from a hospital. Patients with end-stage renal disease receive dialysis treatments at a KNA facility. Patients come to a KNA facility in one of three ways: (1) by order of one of the three KNA physicians, (2) through referral by another physician to one of the three physicians who own KNA and then by order of the KNA physician, or (3) by order of a physician to whom KNA has issued staff privileges.
KNA's physicians are responsible for, supervise and delegate where appropriate all medical care and procedures performed in the dialysis facilities. Under the supervision of the physicians, patients are cared for by a team consisting of one or more licensed professional nurses (RN), one or more licensed practical nurses (LPN) and one or more patient care technicians (PCT).
You first ask under what circumstances an LPN may perform intravenous fluid therapy (IVFT) procedures as a part of dialysis treatment. You inform us that the LPNs have performed a full range of procedures, including sticking patients to start dialysis (the sticking of the dialysis access site with a needle is commonly referred to as venipuncture); connecting needles to A-V tubing; removing the needles when dialysis was completed; administering all types of medications, including the anesthetics lidocaine and heparin; initiating normal saline bolus; drawing up heparin and lidocaine to be administered; and administering intravenous epogen and intravenous calcijects, drugs commonly used in dialysis.
Based on the materials you submitted, we understand dialysis treatment to be a type of intravenous fluid therapy (therapeutic infusion or injection of substances through the venous system). Further, we address IVFT as a medical procedure which is inherently a practice of the healing arts as defined by K.S.A.65-2802, more specifically the practice of medicine and surgery as defined by K.S.A. 65-2869, and thus derivatively a concurrent nursing practice ("the execution of the medical regimen as prescribed by a person licensed to practice medicine and surgery" K.S.A. 65-1113). In other words we consider IVFT to be primarily a medical practice which devolves into a concurrent nursing practice.
 "It may safely be stated that diagnosis involving prescription, the administration of therapeutic measures of treatment by any remedial means, embraces the practice of medicine and not nursing practice. Nevertheless, it is apparent that, legally, nurses perform many functions that are medical acts. The performance by a nurse of any function involving treatment constitutes the practice of medicine, and unless a nurse complies with certain minimum requirements, she is violating the law. Those minimum requirements are that she act under the order and the direction and/or supervision of a duly licensed physician, that she comprehend the cause and effect of the order and that the order be legal." M.J. Lesnik, Nursing Practice and the Law, p. 277 (2nd Ed. 1947).
There may be circumstances where the practice of nursing is independent of, not derivative from, and thus concurrent with the practice of medicine. See K.S.A. 1994 Supp. 65-6311(d) (defining practice of nursing). However, we understand the medical procedure which is the subject of this opinion, IVFT as a part of dialysis treatment, not to be one of those circumstances. Accordingly, the question posed is best approached initially through the healing arts act, K.S.A. 65-2801 et seq., which governs the practice of medicine and surgery through the requirement of a license. Practicing medicine and surgery without a license is unlawful unless one or more of the statutory exemptions applies. K.S.A. 65-2803; 65-2872. The first of two exemptions which are of particular interest is:
 "(g) Persons whose professional services are performed under the supervision or by order or by referral from a practitioner who is licensed under this act." K.S.A. 65-2872.
(For the sake of simplicity and due to the context of this opinion, a practitioner of the healing arts will be referred to as a physician.)
The subsection (g) exemption permits a physician to authorize other persons to perform professional services which, without such authorization, would be considered the unlawful practice of the healing arts. Without going into an extended discussion, suffice it to say that in our opinion IVFT is a "professional service."See Curtis Ambulance v. Shawnee County Board of CountyCommissioners, 811 F.2d 1371, 1379-1384 (10th Cir. 1987). This subsection sanctions three mechanisms by which a physician may authorize another person to practice the healing arts: (1) under supervision of a physician; (2) by order of a physician; or (3) by referral of a physician.
We understand these mechanisms as forms of a physician's authority to lawfully delegate, or entrust, the performance of a healing arts service to another person. This authority is circumscribed by potential disciplinary action against the physician for "delegating professional responsibilities to a person when the licensee knows or has reason to know that such person is not qualified by training, experience or licensure to perform them." K.S.A. 1994 Supp. 65-2837(b)(26).
So pursuant to subsection (g) of K.S.A. 65-2872, a physician may delegate the performance of IVFT to another person, including an LPN, when in the physician's judgment the LPN is sufficiently trained or experienced to perform IVFT. The healing arts act does not specify the type or extent of experience or training, and thus the physician's professional discretion is determinative. The delegation may occur under supervision of the physician, by order of the physician or by referral of the physician. In the absence of any statutory and regulatory requirements, the form of physician supervision, order or referral is also left to the professional judgment and discretion of the physician and thus may be oral or written, direct or indirect, with or without the presence of the physician, etc.
 "[D]epending upon the nature of the delegated acts and the skills of the nonphysician, these acts might be performed on a limited, independent basis, with referral of more difficult problems to physicians; upon referral from a physician after an initial diagnosis has been made; or under a physician's supervision, which may vary from personal observation to periodic communication with and review of the work of the nonphysician. The medical acts considered delegable and the necessary qualifications of any nonphysician to perform them also will vary over time, as physicians and nonphysicians obtain new knowledge and skills from experience and as medical technology and economic conditions change." Kissam, Physician's Assistant and Nurse Practitioner Laws: A Study of Health Law Reform, 24 U. Kan. L. Rev. 1, 7 (1975)
An LPN considered qualified by a physician through training, experience, or licensure and who performs IVFT under physician supervision, or by order or referral of a physician, is not considered engaged in the unlawful practice of medicine and surgery; and as IVFT is considered a nursing practice which derives from the practice of medicine and surgery, such an LPN is not engaged in the unlawful practice of nursing.
The second exemption to the proscription from practice of the healing arts without a license which is of interest is:
 "(m) Nurses practicing their profession when licensed and practicing under and in accordance with the provisions of article 11 of chapter 65 of the Kansas Statutes Annotated, or amendments thereto, [the regulation of nursing act] and any interpretation thereof by the supreme court of this state." K.S.A. 65-2872.
This exemption authorizes licensed nurses to engage in activities set forth in the regulation of nursing act which might otherwise be considered the practice of healing arts. With some exceptions the regulation of nursing act prohibits unlicensed persons from engaging in the broadly defined realm of nursing. K.S.A.65-1114; K.S.A. 1994 Supp. 65-1124, as amended by L. 1995, ch. 97, sec. 3. Conversely, an RN or LPN is authorized to engage in the practice of nursing which includes the practice of healing arts to the extent of executing a physician prescribed medical regimen. Under the regulation of nursing act an LPN's practice of nursing is, however, limited by the parameters of "tasks and responsibilities based on an acceptable educational preparation" and those tasks and responsibilities must be performed "under the direction" of an RN or a physician. K.S.A. 65-1113(d).
In relation to IVFT specifically, the regulation of nursing act further limits an LPN's scope of practice through K.S.A. 1994 Supp. 65-1136. This statute authorizes any LPN to perform a limited scope of IVFT [defined at K.A.R. 60-16-102(a)] and authorizes an LPN who meets specified qualifications to perform an expanded scope of IVFT [defined at K.A.R. 60-16-102(b)]. In both circumstances the LPN is required to practice under the supervision of an RN. Here supervision partakes of the components of guidance, initial direction and periodic inspection by the RN. K.S.A. 1994 Supp. 65-1136(a)(4). In addition, pursuant to a regulation adopted by the board of nursing, an LPN is prohibited from performing certain aspects of IVFT. K.A.R. 60-16-102(c). However, K.S.A. 1994 Supp. 65-1136 contains a specific and clear exception:
 "(h) Nothing in this section shall be construed to prohibit performance of intravenous fluid therapy by a licensed practical nurse when performed by delegation of a person licensed to practice medicine and surgery or dentistry."
As discussed above, a physician may delegate the performance of professional services (such as IVFT) to persons the physician deems qualified by training, experience or licensure. And as discussed above the delegation by a physician need not take any particular form.
The problem lies herein: Under the healing arts act an LPN may perform IVFT without any limitations regarding scope and without RN supervision if the authority to do so is delegated (i.e. under supervision, by order or by referral) by a physician who considers the LPN qualified by training, experience or licensure. However, under the nurse practice act an LPN may perform only a limited scope of IVFT under RN supervision or, if statutorily qualified, may perform an expanded scope of IVFT under RN supervision but is always precluded from performing certain aspects of IVFT, except a physician may always delegate the performance of IVFT to an LPN. This becomes very circular.
The only sensible approach, taking all provisions into account, is to consider an LPN authorized to perform IVFT if the LPN comes within at least one of the two separate and distinct lines of authority as opposed to determining that the LPN must qualify under both lines of authority. Further, the physician delegation provision of K.S.A. 65-1136(h) must be understood as a reiteration and re-emphasis of the physician delegation provisions of the healing arts act, K.S.A. 1994 Supp. 65-2872(g) and K.S.A.65-2837(b)(26), as opposed to new authority.
A physician may choose to utilize an LPN in a manner which is consistent with K.S.A. 1994 Supp. 65-1136, that is by using the statutory criteria to determine whether and to what extent an LPN is qualified to perform IVFT pursuant to the delegated authority of the physician. However a physician is authorized to exercise professional judgment when ordering, referring or supervising professional services and therefore is not bound by the statutory constraints of K.S.A. 1994 Supp. 65-1136 or any regulation adopted thereunder when delegating IVFT.
Turning the question around gives another, and perhaps clearer, perspective on the same issue: Would an LPN who (1) a physician considers qualified by training or experience, (2) performs IVFT under the supervision, by order or by referral of the physician, and (3) is not in compliance with the requirements of K.S.A. 1994 Supp. 65-1136 of the nurse practice act, be subject to disciplinary action by the board of nursing? Would the physician be subject to disciplinary action by the board of healing arts? Based on our analysis, the answer to both questions is clearly "no."
You also inform us that the PCTs undergo a rigorous training program provided by KNA. The program combines classroom work and independent study, using a 435 page manual entitled "Core Curriculum for the Dialysis Technician," and at least eight weeks of on-the-job training. Additional training is provided on an on-going basis. You further inform us that the PCTs have: Set up the dialysis machines and assisted the RNs and LPNs in monitoring patients receiving dialysis; performed venipuncture; removed the needles when the dialysis procedure was completed; during dialysis connected needles to A-V tubing; drawn up and administered heparin and lidocaiane; and initiated normal saline bolus.
You ask under what circumstances an unlicensed person such as a trained patient care technician may perform intravenous fluid therapy procedures as a part of dialysis treatment.
The answer to this question follows from the analysis of your first question. A physician may delegate the performance of IVFT to a PCT when in the physician's judgment the PCT is qualified by training or experience. K.S.A. 1994 Supp. 65-2837(b)(26). The form of delegated authority may be pursuant to supervision, by order or referral of the physician. K.S.A. 65-2872(g). This statutory grant of authority has been further sanctioned by the Kansas Supreme Court:
 "The use of technicians to assist medical doctors is a long-standing practice. Nurses, nurses' aides, physical therapists, X-ray technicians, laboratory technicians, prosthesis technicians, and fitters of artificial eyes are examples of the use of ancillary technicians. The right of referral by physicians is recognized by K.S.A. 65-2782(g)." State, ex rel., v. Doolin and Shaw, 209 Kan. 244, 262 (1972).
Thus a trained or experienced PCT is not considered to be engaged in the unlawful practice of healing arts when performing IVFT under supervision, or by order or referral of a physician. In addition, as the performance of IVFT is considered a the execution of a medical regimen and thus a derivative nursing practice, such a PCT is likewise not considered engaged in the unlawful practice of nursing.
You also ask whether the delegation authority set forth in 1995 SB 151, sec. 7 (now L. 1995, ch. 97, sec. 7) conflicts with the delegation authority set forth in K.S.A. 1994 Supp. 65-1136. As indicated above K.S.A. 1994 Supp. 65-1136(h) authorizes a physician to delegate to an LPN the performance of IVFT.
L. 1995, ch. 97, sec. 7, in pertinent part provides:
 "(a) All nursing procedures, including but not limited to administration of medication, delegated by a licensed nurse to a designated unlicensed person shall be supervised. . . ."
This statute further establishes factors which a nurse should assess in determining the degree of nursing supervision required.
We do not see a conflict between these two statutes. The former pertains to a physician's authority to delegate IVFT, a medical procedure, to an LPN. The latter pertains to a nurse's authority to delegate a nursing procedure to an unlicensed person. We note that by virtue of L. 1995, ch. 97, sec. 7, a nurse is authorized to delegate IVFT (a medical procedure and, as discussed, derivatively a nursing procedure) to an unlicensed person such as a PCT. While we acknowledge that in a given situation it may be difficult to sort out by what authority a particular person is performing a procedure, on the face of the statutes and as a matter of law they do not conflict.
You also ask whether a physician is required to be physically present when an unlicensed person, such as a PCT, performs a procedure that the physician has delegated.
In essence this question has been addressed. As indicated, unlicensed persons are authorized to perform professional services under the supervision or by order of or referral from a physician. K.S.A. 65-2872(g). Also as indicated, the healing arts act does not define the parameters of supervision nor specify any requirements of supervision by a physician. Consequently the type and degree of appropriate supervision is fact specific and remains in the realm of a physician's professional judgment.
You also ask whether an RN and LPN are functioning under their own licenses or under the physician's license when a physician delegates a task to an LPN or PCT with supervision of the task by an RN, or joint supervision by an RN and the physician.
It is very difficult to respond to this question in the abstract. As seen from the discussion and conclusions reached herein, depending on the situation the RN and LPN may be functioning under their licenses or under the physician's license or both. If the RN and LPN are considered "functioning under" their licenses, each must comply with the provisions of the regulation of nursing act, but with the understanding that the nurse practice act does not usurp the authority of a physician to delegate professional services to persons (licensed or not) whom the physician considers qualified to perform the task. As seen, a nurse's non-compliance with the regulation of nursing act cannot result in disciplinary action if the nurse was acting in accordance with a physician's lawful delegation of authority. If the RN and LPN are considered "functioning under" the physician's license, the physician must comply with the provision of the healing arts act which requires delegation of professional responsibilities only to those person deemed qualified by training, experience or licensure.
It seems to us that the critical point is that the RN and the LPN function under one of the lines of authority (either physician delegated or licensure authorized) so that the patient is assured of receiving care and treatment from qualified persons.
In addition you present a list of specific medical procedures and ask which of the procedures may be delegated by the physician to nurses and unlicensed persons. A physician may delegate any professional service to any person if the physician is satisfied the person is qualified by training, experience or licensure.
Finally you ask whether the Kansas board of nursing has authority to render informal legal opinions or interpretations of law concerning the scope of permissible activities or procedures delegated from a physician to an unlicensed person.
The board of nursing is established by statute. K.S.A. 1994 Supp.74-1106.
 "Administrative agencies are creatures of statute and their power is dependent upon authorizing statutes, therefore any exercise of authority claimed by the agency must come from within the statutes. There is no general or common law power that can be exercised by an administrative agency." Pork Motel, Corp. v. Kansas Department of Health and Environment, 234 Kan. 374, 378
(1983).
The board's duties and powers are thus both established and limited by statutes which set forth its authority. The board is authorized to license qualified professional nurses, practical nurses, advanced nurse practitioners, nurse anesthetists and mental health technicians. K.S.A. 1994 Supp. 74-1106(c); 65-1115; 65-1116; K.S.A. 65-1130; 65-1151. The board is also authorized to accredit nursing and mental health technician programs and to prescribe curricula and standards for such programs. K.S.A. 1994 Supp. 74-1106(c); K.S.A. 65-1119. "For proper legal cause" the board is authorized to limit, deny, suspend or revoke any license or accreditation it issues. K.S.A. 1994 Supp. 74-1106(c). Further the board has authority to adopt rules and regulations consistent with the regulation of nursing act which are necessary to carry the act into effect. K.S.A. 1994 Supp. 74-1106(c). A rule or regulation is an agency policy of general application which has the effect of law once it is filed and published. Absent filing and publication, an agency policy which purports to have general application is actually a nullity and of no force or effect. Bruns v. Kansas State Boardof Technical Professions, 255 Kan. 728 (1994).
Based on these principles we opine that the board's authority does not extend to issuing informal legal opinions or interpretations of law concerning physician delegation. The board may, of course, properly adopt rules and regulations within the confines of its statutory authority which implement or interpret legislation enforced or administered by the board. Any other policy statement issued by the board has no force or effect. K.S.A. 1994 Supp.77-415; Bruns v. Kansas State Board of Technical Professions,255 Kan. 728 (1994).
In conclusion a physician may delegate the performance of IVFT to another person, including an LPN, when in the physician's judgment the LPN is sufficiently trained or experienced to perform IVFT. The healing arts act does not specify the type or extent of experience or training, and thus the physician's professional discretion is determinative. The delegation may occur under supervision of the physician, by order of the physician or by referral of the physician. In the absence of any statutory and regulatory requirements, the form of physician supervision, order or referral is also left to the professional judgment and discretion of the physician.
A licensed practical nurse or an unlicensed technician who a physician considers qualified through training, experience, or licensure who performs intravenous fluid therapy under supervision, by order or referral of a physician is not considered engaged in the unlawful practice of medicine and surgery. Intravenous fluid therapy is a nursing practice which derives from the practice of medicine and surgery. Thus neither is such licensed practical nurse or unlicensed technician considered engaged in the unlawful practice of nursing even if the licensed practical nurse does not qualify to perform intravenous fluid therapy under the nurse practice act.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Camille Nohe Assistant Attorney General